No. 23079.

MAJESTIC HEIGHTS CO., A COLORADO CORPORATION *v.* THE
BOARD OF COUNTY COMMISSIONERS OF JEFFERSON COUNTY
AND THE DEPARTMENT OF HIGHWAYS OF THE STATE OF
COLORADO.
(476 P.2d 745)

Decided November 16, 1970.

HOFFMAN, GOLDSTEIN & ARMOUR, GILBERT GOLDSTEIN, for plaintiff in error.

JOSEPH E. MAKER, County Attorney, LEONARD R. LISS, for defendant in error Board of County Commissioners.

DUKE W. DUNBAR, Attorney General, JOSEPH M. MONTANO, Chief Highway Counsel, Assistant Attorney General, LEONARD RIPPS, Assistant Attorney General, for defendant in error Department of Highways, State of Colorado.

*En Banc.*

MR. JUSTICE DAY delivered the opinion of the Court.

MAJESTIC HEIGHTS CORPORATION was plaintiff below in an inverse condemnation action brought against the Board of County Commissioners of Jefferson County and the Department of Highways of the State of Colorado. We will refer to the parties as Majestic or plaintiff and as Highway Department or defendant.

The suit was commenced on June 30, 1965, and is based on allegations in the complaint that Majestic's land abutted on West 6th Avenue, a public roadway in Jefferson County, and that it had a right to direct an immediate access and egress between West 6th Avenue and its property. It was alleged that defendants had obstructed and barricaded the roadway at its boundary with plaintiff's property, preventing plaintiff and the public from traversing the property and thereby confiscating plaintiff's right of access to and from the roadway. On the

claim for damages the complaint alleges that the property was zoned for commercial and business uses and was especially desirable and valuable for such uses only by reason of its direct and immediate access to West 6th Avenue; but, as a result of defendants' denial of access, it has become valueless for such uses, causing diminution in value in the amount of $559,665. It was further alleged that denial of access was a violation of the Colorado constitution, article II, section 15, forbidding the taking of private property for public use without just compensation; that defendants have refused to pay and they have also refused to restore direct access between the property and the roadway.

Majestic sought alternative relief, *i.e.*, that defendants either be ordered to remove the obstructions and barricades which prevent direct ingress to and egress from the property directly from and to West 6th Avenue, and additionally be enjoined from interfering with such access; or, that plaintiff be awarded damages as alleged.

The Highway Department answered with general denials and affirmative defenses. Among the affirmative defenses in its amended answer are that the claim was barred by the Statute of Limitations (C.R.S. 1963, 87-1-11); that the claim for damages, if any, was barred by laches; that Majestic did not have the rights of access directly to and from West 6th Avenue because such access was modified and regulated by proper exercise of the police power when West 6th Avenue was declared a freeway; that a local service road was constructed in front of the property affording access from the property to the service road. That therefore the damages, if any, resulting therefrom are *damnum absque injuria*. Further, that at the time Majestic purchased the property it was already burdened with the loss of direct access over and across the service road and directly into West 6th Avenue; that the access remaining has not been substantially impaired, and, therefore, the damages, if any, are also *damnum absque injuria;* that the right to compensation,

if any, for the taking or damaging of access rights resulting from the denial, if any, of access between the property and West 6th Avenue was a personal one belonging to plaintiff's remote predecessor in title, and that the predecessor has been compensated therefor.

The County filed a Motion to Dismiss which was taken under advisement until the conclusion of the hearing, at which time it was granted.

The case was tried *"in limine"* solely upon the issue of whether there was liability for the taking. Trial was to the court. Written findings of fact and conclusions of law were made by the court and judgment was in favor of the County and State Highway Department. We affirm.

Since resolution of this controversy depends upon the facts, some detailed recital thereof is deemed necessary. The property in question is located just north of West 6th Avenue, a freeway which runs in an east-west direction. It is situated about one-fourth of a mile from Kipling Street on the east and about one-half of a mile from Simms Street on the West, both of which connect with West 6th Avenue via interchange system of roads. The property faces south and extends approximately 1168-feet east-west parallel to a frontage road. Miller Court and Nelson Street — both 50 feet in width — intersect and divide the tracts, leaving a frontage of 1068 feet.

On June 11, 1942, West 6th Avenue was designated a freeway by resolution of the Highway Advisory Board, approved by the Governor. The Resolution was never recorded in Jefferson County clerk and recorder's office.

Since 1947, West 6th Avenue has been a four-lane highway with a depressed median dividing the two eastbound lanes and the two westbound lanes of traffic. In the same year, in connection with the West 6th Avenue construction, the Highway Department purchased a 50-foot strip of land, along the south side of the tract involved, from Majestic's immediate predecessor in title;

and, within the 50-foot strip, constructed a service road abutting the property which separated it from the new four-lane West 6th Avenue. The frontage road was 30 feet wide, including 22 feet providing lanes for two way traffic and 8 feet for a shoulder on the north. On the remaining 20 feet separating the service road and West 6th Avenue a drainage ditch was constructed.

The service road, at the time Majestic purchased the tract and up to 1965, dead-ended east of Simms Street and was blacktopped only for about 1000 feet west of Kipling, and the balance of it being a poorly graded dirt road, slightly graveled. The plaintiff's property at all times since the road was laid has had access at all points on the service road, which, until 1965, connected with Kipling Street at a point approximately 1300 feet east of and beyond the southeast corner of Majestic's property.

The north-south streets, Miller Court and Nelson Street, intersect with the service road and divide plaintiff's tracts. At the time of the trial, only one — Miller Court — was an improved street over which access could be had from the property and the service road to streets to the north. Majestic's property is bounded on the east by Oak Street, which was unimproved at the time of the trial.

Plaintiff purchased the land in 1957. It was then a farm; but it is undisputed that at the time of the purchase the property was zoned for commercial use. Plaintiff alleges that the property was purchased in reliance upon *verbal* assurances that it would have direct access to West 6th Avenue. It is also undisputed that from 1947 to 1965 farmers and others used at least one, and possibly more, north-south "paths" or "lanes" from the property in question across the service road to enter directly the main travel lanes of West 6th Avenue. It is not established in the record how or when these lanes were created. They are not dedicated roadways and did not appear on any maps or plats. The lane or lanes had no highway control signs, such as stop signs, or yield signs,

at their intersections with the service road or West 6th Avenue. The Highway Department contends they were illegal and built by trespassing across the state right-of-way which was used for a drainage ditch.

In 1965 the Highway Department extended the service road westward to Simms where it was connected with the diamond interchange of Simms and West 6th Avenue. At the same time the interchange at Kipling was modified. Since late 1964 or early 1965, the lane or lanes leading from the service road abutting plaintiff's property directly on to West 6th Avenue have been blocked by a fence installed by the Highway Department. The only ingress or egress from plaintiff's property and West 6th Avenue is via the service road, thence to the Kipling or Simms interchanges or by more indirect use of the street system to the north.

Majestic argues that notwithstanding the 50-foot right-of-way owned by the state which purchased it for the service road and drainage ditch, Majestic is an abutting owner to the main travel lanes of West 6th Avenue. No authority is cited for this view, and we have not been able to find any case holding that a landowner separated from a freeway by a service road and a ditch, and having no direct legal access provided by the local highway authority to the freeway, is an abutting owner to that freeway.

In our view the property which fronts on the service road and has direct access thereto is abutting on the service road and not on the main arterial routes of West 6th Avenue.

A further argument proposed by Majestic is that since there was, up until the latter part of 1964, access from the property via a lane or lanes onto the main travel portion of West 6th Avenue, the Highway Department did not acquire the right of access in question by adverse possession over the years from 1945 to 1964 and should now pay compensation for taking away the access.

The findings of fact by the trial court are contrary to

Majestic's contention that the right of access to West 6th Avenue was first denied in 1964. In pertinent part, the trial court entered findings of fact that direct access from the plaintiff's property to the main traveled portion of West 6th Avenue had been eliminated in 1947, when the property was owned by plaintiff's remote grantor; that the taking or damaging, if any, occurred at that time and the right of action accrued to the then owner of the property. The court further concluded that even if such loss of direct access had been compensable, which it did not determine, recovery is now barred by laches and the six year Statute of Limitations. The court further concluded that the access to the property via the service road is reasonable, and that any inconvenience suffered by the plaintiff is merely different in degree, not in kind, from that sustained by the general public and is noncompensable. The trial court accordingly decreed that the plaintiff was not entitled to the relief prayed for and dismissed the complaint.

The evidence supporting the trial court's findings is ample as detailed above. In 1957, when the plaintiff purchased the property, the foregoing conditions described existed and the nature of the freeway was obvious. Concerning the finding of the court that there was not legal access to West 6th Avenue except through the interchanges, there was a lack of evidence that the Highway Department provided, maintained or permitted the lanes that led from the service road onto 6th Avenue. They were rough, unmarked by any signs; and, additionally, there was testimony that the highway maintenance crews attempted to keep the ditch dug as a barrier to such traffic but unidentified persons filled in the ditch and reconstructed the pathway while at other places the driving of the cars across the ditch broke down the sidewalls to make the ditch more passable.

Since the evidence thus supports the trial court's findings that Majestic had nothing that was taken away from it, we, on review, are bound by such findings. It

follows that if there was a taking of access and diminution in value thereby it occurred when the plaintiff's remote grantors deeded a portion of their land to the Highway Department. At that time the right of action accrued to the then owners of the property, predecessors in title to the plaintiff, if they in fact were not compensated for changing of the direct access to what was at that time West 6th Avenue.

■■ Colorado law is clear that an action for damages for taking of a property right is personal to the owner of the property in question unless it is specifically assigned to the grantee of the property.

"Whatever may be the right to compensation for the value of the land taken, and damages to the residue occasioned by the taking, it was a personal one which belonged to the owner. In the instant case, it did not pass by deed to plaintiff, and there is no evidence that he ever acquired such right by assignment from the owner. He took the land in the condition it was in when he acquired title and his right in this action is limited to the damages, if any, which have since accrued. The land was burdened with this right of way when plaintiff purchased it, therefore he was confined in his recovery to the damages, if any, subsequently arising." *Rogers v. Lower Clear Creek Ditch Co.*, 63 Colo. 216, 165 P. 248.

*See also Colorado Midland Railway Co. v. Trevarthen*, 1 Colo. App. 152, 27 P. 1012. Plaintiff does not allege, and there is no evidence to show that there was any assignment of this right of action to Majestic.

■■ We therefore conclude that Majestic bought the property in question subject to this burden of indirect access to the freeway, and cannot now recover compensation for the loss of such direct access. As stated in *Rogers v. Lower Clear Creek Ditch Co., supra,* Majestic is limited in its recovery to damages that have arisen since it acquired the property.

Considerable testimony was adduced by Majestic at the trial to show that the Highway Department's modi-

fication of the frontage road's connection with Kipling Street was damaging to plaintiff's property.

In order to be entitled to recover for any damage caused by this modification, Majestic must show that the damages to it are different in kind not merely in degree from the damages sustained by the general public; particularly here it must show that its right of access to and from the general street system was substantially impaired, not merely inconvenienced, by the modification. See Troiano v. Department of Highways, 170 Colo. 484, 463 P.2d 448; Radinsky v. City and County of Denver, 159 Colo. 134, 410 P.2d 644; Gayton v. Department of Highways, 149 Colo. 72, 367 P.2d 899; Denver Union Terminal Ry. v. Glodt, 67 Colo. 115, 186 P. 904; Gilbert v. Greeley S. L. & P. Ry., 13 Colo. 501, 22 P. 814.

The trial court concluded on the basis of the evidence that notwithstanding that the route of access via the Kipling Street interchange is less usable than before, the access available to the property when considered in its entirety is still reasonable and has not been substantially impaired. It found that access is available not only via Kipling Street interchange easterly, but via the Simms Street interchange as well and is also available northerly via Miller Court. By the use of any one of these routes reasonable access can be gained from the property into the general street system and from the general street system to the property.

There is abundant evidence in the record to support the trial court's conclusion.

To the extent, therefore, that Majestic's damages, if any, are those caused by circuity of route and inconvenience in reaching its property or diversion of traffic away from its property, these damages are no different in kind from those of the general public and are noncompensable. Troiano v. Department of Highways, supra; Radinsky v. City and County of Denver, supra; Gayton v. Department of Highways, supra.

The judgment is affirmed.