No. 22742.

Robert Thornton, Herman F. Brueggeman, Byron L. Akers, Jr., and William R. Aman *v.* The City of Colorado Springs and The Department of Highways, State of Colorado.

(478 P.2d 665)

Decided December 28, 1970.

JOHN R. BENNETT, ALFRED HEINICKE, for plaintiffs in error.

DUKE W. DUNBAR, Attorney General, JOSEPH M. MONTANO, Chief Highway Counsel and Assistant Attorney General, for defendant in error Department of Highways, State of Colorado.

WILLIAM T. ECKHART, Assistant City Attorney, for defendant in error City of Colorado Springs.

*En Banc.*

MR. JUSTICE DAY delivered the opinion of the Court.

PLAINTIFFS in error, who will be referred to as plaintiffs or by name, are the owners of certain parcels of land located within the City of Colorado Springs. The parcels in question abut the east and west sides of a north-south street known as Academy Boulevard. Defendants in error were defendants in the lower court and will be referred to as such or by name.

Plaintiffs sought to temporarily and permanently enjoin the defendants from proceeding with the construction of a solid median strip dividing Academy Boulevard, and particularly at the points of intersection with platted but not yet constructed Marion Drive and Uintah Street. In the alternative, plaintiffs prayed for damages for diminution of the value of their property which they allege would result from lack of access to the platted intersections.

Following a hearing on the merits, the injunction was denied as was also the claim for damages. The court held *inter alia* that (1) There was sufficient evidence to show that the plaintiffs had dedicated a right of way in Academy Boulevard to the public; (2) the construction of the solid median down the center of the street was a valid exercise of the police power, and as such did not constitute a taking of private property; (3) the plaintiffs had not shown that the placing of the median resulted in damage to the remainder of their property; and (4) if anything, there was an enhancement in value to the plaintiffs' property as a result of the construction and paving of Academy Boulevard. We affirm the judgment of the court below.

Academy Boulevard was constructed by the city and the State Highway Department. Plaintiffs Thornton and Brueggeman own real estate that abuts the east side of this street, and plaintiffs Aman and Akers own real

estate that abuts the west side of the street. In constructing Academy Boulevard, a median barrier in the form of a concrete strip has been established dividing the street into one-way north and south bound lanes. At various locations openings called median cuts have been established to allow vehicle traffic to go on through, make left turns, or to have access to opposite lanes at some U turn intersections. The median in front of the property of the plaintiffs is a solid barrier and does not permit the above mentioned access at this point. Two platted streets feed into Academy through the property of plaintiffs Aman and Akers, and opposite the property of Thornton and Brueggeman. This action questions the right of the defendants to establish the solid median barrier at the above locations, opposite the land of the plaintiffs.

I.

Plaintiffs allege as one assignment of error that no timely acceptance of the dedication of the roadway by their predecessors in title has ever been made by any public authority. They therefore argue that Academy Boulevard is built on a private right of way, or on private property. Implicit in this contention is their assertion that inasmuch as the right of way remains private, the city may not impair the right of the plaintiffs to access over the roadway.

The record establishes that as early as 1951 a right of way thirty feet on either side of a section line was created "to be held henceforth by the parties, their heirs and assigns, subject to use as a 60 foot public highway or road." Thirty feet of this right of way presently lies on either side of the center line of Academy. It appears that subsequent to the above provision, the thirty feet on the west side of the center line was platted and the plat filed in the public records in 1952. Plaintiffs do not challenge the validity of this statutory dedication. They do claim, however, that the thirty foot strip on the east side of the center or section line remains unaccepted.

In advancing this argument, plaintiffs rely on *Commissioners v. Warneke,* 85 Colo. 388, 276 P. 671. In that case this court, after noting that incomplete or defective statutory dedications will often be sustained as common law dedications if the streets and roads marked on such statutory dedications are accepted by the public, stated: "[T]here must be an acceptance, express or implied, of such offer by the public authorities within a reasonable time; and that, unless the offer is accepted within a reasonable time, the public may lose its right to accept. * * *"

A distinguishing feature in *Warneke* was that about 24 years had elapsed from the time the dedication was made until the time the municipality sought to accept. The court concluded:

"The public acquired no rights whatever in this platted street until expressly or impliedly accepted, and prior to an acceptance the rights of the plaintiff intervened, through adverse possession, and, in effect, withdrew the offer to dedicate."

*See also Litvak v. Sunderland,* 143 Colo. 347, 353 P.2d 381.

██ Acceptance, however, need not be made only in the manner provided by statute (C.R.S. 1963, 139-17-1, *et seq.*) but may also be made according to common law principles. *Denver v. Publix Cab Co.,* 135 Colo. 132, 308 P.2d 1016; *Denver v. Clements,* 3 Colo. 472. In determining whether or not there has been a common law acceptance, no particular form is required, as long as there is an act or acts, unequivocal in nature and showing that the municipality has assumed control and possession of the property in question. *See Town of Manitou v. International Trust Co.,* 30 Colo. 467, 70 P. 757; *Leadville v. Coronado Mining Co.,* 37 Colo. 234, 86 P. 1034. *See also George C. Armbruster, Jr. v. Wildwood,* 41 F.2d 823.

██ In the instant case, the evidence adduced at trial indicates that preliminary planning for a street at the location in question was started as early as 1956 or 1957, with the portion of the property now located on

the western side of the center line of Academy being used as a roadway in 1959. The east lane, however, was not constructed until later due to telephone cable problems. Both lanes of the road (then known as Sunshine Avenue) were in operation by 1961. It is well-established that the opening up and improving of a street is sufficient to constitute acceptance of a dedication of a right of way. We hold that the dedication was accepted in a timely manner, in accordance with the well-established common law method.

## II.

As their second ground, plaintiffs allege that the construction of the solid median violates their right of access to and use of the entire roadway. They assert that as abutting landowners access to and from the highway is an incident of ownership of which they cannot be deprived without compensation. Colo. Const. art II, § 15. *See also Boxberger v. Highway Commission,* 126 Colo. 526, 251 P.2d 920.

The issue of whether denial of access is compensable has recently been discussed in *Troiano v. Department of Highways,* 170 Colo. 484, 463 P.2d 448, a case decided after the briefs were filed in this case.

It was held in *Troiano* that in order to be compensated for loss of access, the claimant must establish that a reasonable means of access to and from her property no longer existed:

"Right of access is subject to reasonable control and limitation. So long as the landowner retains a reasonable means of access to and from his property, partial loss of access is not compensable." *Troiano, supra.*

*See Radinsky v. Denver,* 159 Colo. 134, 410 P.2d 644; *Gayton v. Department of Highways,* 149 Colo. 72, 367 P.2d 899; *Heckendorf v. Littleton,* 132 Colo. 108, 286 P.2d 615.

In the instant case, plaintiffs introduced evidence that would indicate that if the solid median strip were allowed to remain, persons wishing to reach the property

in question would have to drive to openings or cuts in the strip at places past their land and not immediately adjacent to it. We have consistently held that: "Mere inconvenience and mere circuity of route necessary for access [sic] or egress occasioned by a public improvement are not compensable items of damage." *Troiano, supra. See also Majestic Heights Co. v. Board of County Commissioners,* 173 Colo. 178, 476 P.2d 745; *Radinsky v. Denver, supra; Gayton v. Department of Highways, supra.*

■ We stress the point — common to divided highways — that plaintiffs have access to the Boulevard abutting their respective properties. Plaintiffs cite *Minnequa v. Denver,* 67 Colo. 472, 186 P. 539, and *Denver Railway Co. v. Glodt,* 67 Colo. 115, 186 P. 904, to support their claim. We again distinguish those cases because in each of them there was a substantial impairment of access. Where, however, there is mere inconvenience resulting from a more circuitous route and from the diversion of traffic, diminution of value is not compensable.

III.

■■ Plaintiffs lastly urge that the establishment of the median as a continuous unbroken strip past their property is an arbitrary, capricious, and unreasonable exercise of the police power. They assert that:

"Any legislative action which takes away any of the essential attributes of property, or imposes unreasonable restrictions thereon, violates the due process clauses of the constitutions of the United States and the State of Colorado." *City of Colorado Springs v. Grueskin,* 161 Colo. 281, 422 P.2d 384.

To substantiate their claim of unreasonableness, plaintiffs point to evidence presented at trial that questioned the need or desirability for a solid median strip at Marion Drive and Uintah Street.

We note that much of the evidence presented at the trial, and upon which the court apparently relied in its findings, was disputed. It is axiomatic that where there

is sufficient evidence to sustain the conclusions and findings of the trial court, such conclusions and findings will not be disturbed on appellate review. *Bennett v. Accounts, Inc.,* 155 Colo. 461, 395 P.2d 225; *Brenaman v. Willis,* 136 Colo. 53, 314 P.2d 691.

The judgment is affirmed.

MR. JUSTICE GROVES not participating.